UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| PAMELA D.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:20-cv-00352-MJD-JPH |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,[2] | ) |
| | ) |
| Defendant. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Claimant Pamela D. applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") from the Social Security Administration ("SSA") on November 13, 2017, alleging an onset date of October 25, 2017. [Dkt. 18-2 at 16.] Her applications were initially denied on January 18, 2018, [Dkt. 18-4 at 4; Dkt. 18-4 at 13], and upon reconsideration on May 22, 2018, [Dkt. 18-4 at 23; Dkt. 18-4 at 30]. Administrative Law Judge Marc Jones (the "ALJ") conducted a hearing on July 10, 2019. [Dkt. 18-2 at 33-58.] The ALJ issued a decision on July 25, 2019, concluding that Claimant was not entitled to receive benefits. [Dkt. 18-2 at 13-

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] According to Federal Rule of Civil Procedure 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named as the Acting Commissioner of the SSA.

1

25.] The Appeals Council denied review on May 5, 2020. [Dkt. 18-2 at 2.] On July 9, 2020, Claimant timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. §§ 405(g) and 1383(c). [Dkt. 1.]

# I. STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. For the purpose of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the

evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted).[3]  "If a claimant satisfies steps one, two, and three, she will automatically be found disabled.  If a claimant satisfies steps one and two, but not three, then she must satisfy step four.  Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).  In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.*  The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past

---

[3] The Code of Federal Regulations contains separate, parallel sections concerning DIB and SSI, which are identical in most respects.  Cases may reference the section pertaining to DIB, such as in *Clifford*, which cites 20 C.F.R. § 404.1520.  227 F.3d at 868.  Generally, a verbatim section exists establishing the same legal point with both types of benefits.  *See, e.g.*, 20 C.F.R. § 416.920.  The Court will not usually reference the parallel section but will take care to detail any substantive differences applicable to the case.

3

relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II. BACKGROUND

Claimant was 49 years old at the time her alleged disability began. [*See* Dkt. 18-5 at 13.] She had graduated high school and attended some college but had not earned a college degree. [Dkt. 18-2 at 38.] She had worked as a corn sorter, nursing assistant, and in factory production. [Dkt. 18-2 at 38; Dkt. 18-6 at 7.][4]

The ALJ followed the five-step sequential evaluation in 20 C.F.R. § 404.1520(a)(4) and concluded that Claimant was not disabled. [Dkt. 18-2 at 24-25.] Specifically, the ALJ found as follows:

---

[4] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

- Claimant last met the insured status requirements of the Social Security Act on June 30, 2019 (her "date last insured").[5]  [Dkt. 18-2 at 18.]

- At Step One, Claimant had not engaged in substantial gainful activity[6] since October 25, 2017, the alleged onset date.  [Dkt. 18-2 at 18.]

- At Step Two, she had "the following severe impairments: chronic heart failure; major joint dysfunction of the left shoulder and left foot; [and] obesity."  [Dkt. 18-2 at 18 (citations omitted).]

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  [Dkt. 18-2 at 19.]

- After Step Three but before Step Four, Claimant had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can frequently reach with the non-dominant left upper extremity.  She can occasionally balance, stoop, and kneel.  She can occasionally work in extreme heat, and occasionally in dust, odors, fumes, and pulmonary irritants.  She can never climb ramps and stairs, never climb ladders, ropes, and scaffolds, never crouch, never crawl, never work at unprotected heights, never work around dangerous machinery with moving mechanical parts, and never operate a motor vehicle as part of her work-related duties.  Every 60 minutes, she must be allowed to shift positions, or alternate between sitting and standing for one to two minutes at a time while remaining on task."  [Dkt. 18-2 at 20.]

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Claimant's RFC, she was incapable of performing any of her past relevant work as a certified nursing assistant and in a composite job as an assembler production worker and hand packager.  [Dkt. 18-2 at 23.]

- At Step Five, relying on the VE's testimony and considering Claimant's age, education, work history, and RFC, she was capable of making an adjustment to other work with jobs existing in significant numbers in the national economy in representative occupations such as a laundry folder, information clerk, and mail sorter.  [Dkt. 18-2 at 24.]

---

[5] Claimant must prove the onset of disability on or before her date last insured to be eligible for DIB.  See Shideler v. Astrue, 688 F.3d 308, 311 (7th Cir. 2012); see also 20 C.F.R. § 404.131.  Recognizing that Claimant also has a claim for SSI, the ALJ's subsequent findings considered the period at issue spanning both claims, beginning with the alleged onset date, October 25, 2017, through the date of the decision.  [See Dkt. 18-2 at 24.]  Claimant was 51 years old on her date last insured.  [See Dkt. 18-5 at 13.]

[6] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a).

### III. **DISCUSSION**

Claimant asserts a host of errors, arguing that the ALJ: (1) based his decision on cherrypicked evidence, (2) did not provide a logical bridge from the evidence to his conclusions, (3) erred in assessing various medical opinions, (4) assessed an RFC for a range of light exertional work that is inconsistent with her capabilities, (5) did not support the limitations he assessed, (6) improperly evaluated her subjective statements concerning her symptoms, (7) failed to present all her limitations to the VE, (8) should have found her disabled according to the Medical-Vocational Guidelines, and (9) found her capable of occupations that are inconsistent with her capabilities. The Court will address the issues as necessary to resolve the appeal beginning with an issue that is dispositive.

**A. Edema**

Claimant contends that the ALJ's reliance on cherrypicked evidence and failure to provide a logical bridge from the evidence to his conclusions is "best reflected" in his assessment of the medical opinions. [Dkt. 20 at 12.]

According to the new regulatory scheme for claims—such as Claimant's here—filed on or after March 27, 2017, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),[7] including those from your medical sources." 20 C.F.R. § 404.1520c(a). The SSA continues to use factors to evaluate the "persuasiveness of medical opinions and prior

---

[7] Administrative medical findings are determinations made by a state agency medical or psychological consultant at the initial or reconsideration level about a claimant's case, "including, but not limited to, the existence and severity of [her] impairment(s), the existence and severity of [her] symptoms, whether [her] impairment(s) meets or medically equals the requirements for any impairment listed in appendix 1 to this subpart, and [her] residual functional capacity." 20 C.F.R. § 404.1513a(a)(1).

6

administrative medical findings" but the "most important factors" to be considered are "supportability" and "consistency." *Id*. How those factors were considered must be explained in the determination or decision. *Id*. at 404.1520c(b)(2). "Supportability" considers the relevance of "the objective medical evidence and supporting explanations presented by a medical source." *Id*. at 404.1520c(c)(1). "Consistency" is compared "with the evidence from other medical sources and nonmedical sources in the claim." *Id*. at 404.1520c(c)(2). Explicit consideration of the remaining factors is permitted, but not always required, except upon a finding that "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same . . . ." *Id*. at 404.1520c(b)(2)-(3). The remaining factors are the source's: (1) "[r]elationship with the claimant" including the "[l]ength of the treatment relationship," "[f]requency of examinations," "[p]urpose of the treatment relationship," "[e]xtent of the treatment relationship," "[e]xamining relationship;" (2) "[s]pecialization;" and (3) "[o]ther factors," such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." *Id*. at 404.1520c(c)(3)-(5).

On June 10, 2019, orthopedist Keith Flak, M.D., completed a "cardiac" medical source statement form. [Dkt. 18-8 at 92-95.] Dr. Flak assessed that Claimant could sit for at least six hours total in eight-hour workday, but he did not indicate how many total hours she could stand/walk. [Dkt. 18-8 at 93.] Dr. Flak assessed that with prolonged sitting in a sedentary job, Claimant would need to elevate her legs "above [her] heart" for "25%" of an eight-hour workday because of "edema." [Dkt. 18-8 at 94.] Dr. Flak also explained that Claimant could not stand for long periods of time and could not work a full 40-hour week. [Dkt. 18-8 at 95.]

The ALJ addressed the medical opinion and explained:

7

> Dr. Flak limited the claimant to light in terms of lifting, but said that she could not stand/walk at all, and that she would need to sit with her feet elevated above her heart 25% of the workday (Exhibit B13F). The undersigned finds this opinion unpersuasive, as it is inconsistent with the record. In particular, the doctor stated that he based his opinion on a 2/16/18 echo that was normal, and a 3/22/18 ejection fraction between 50-55%, which was also normal (Exhibit B11F/24-25).

[Dkt. 18-2 at 23.]

Regarding supportability, Dr. Flak referenced an echocardiogram showing a left ventricle ejection fraction of 50-55%, which he noted to be "normal." [Dkt. 18-8 at 92.] That study, completed on February 16, 2018, recorded only "mild concentric left ventricular hypertrophy" with an ejection fraction of 50-55% that was expressly interpreted to demonstrate "normal" left ventricular systolic function. [Dkt. 18-7 at 293.] However, Dr. Flak also specified that his assessment was supported by edema that is also an objective sign. Moreover, the ALJ did not explain how the assessment was inconsistent with the record.

The Commissioner asserts that the "regulations do not prevent an ALJ from referring to evidence discussed elsewhere in the decision when evaluating medical opinion or prior administrative medical findings." [Dkt. 21 at 15.] The Seventh Circuit has explained "it is proper to read the ALJ's decision as a whole, and . . . it would be needless formality to have the ALJ repeat substantially similar factual analyses" throughout the decision. *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004). However, while the ALJ cited multiple examinations that recorded lower extremity edema, [Dkt. 18-2 at 21], the decision is silent as to how the ALJ evaluated that clinical sign, and how his evaluation of the relevant record supported his material RFC conclusions. The SSA guidance explains that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling "SSR") 96-8p (S.S.A. 1996), 1996 WL 374184, at *7. As explained in

8

the standard of review section, the Seventh Circuit also requires that the ALJ provide a logical bridge to his conclusions.

In addition to the Claimant's chronic heart failure—that the ALJ found to be a severe impairment—the record discloses multiple, potential etiologies for Claimant's edema. Claimant has been diagnosed with "chronic venous hypertension (idiopathic) with inflammation of [her] bilateral lower extremit[ies]." [Dkt. 18-7 at 274.] At one point, she was referred to see a nephrologist, as soon as possible, because of severe peripheral edema. [Dkt. 18-8 at 69.] While the nephrology treatment records do not appear in the record, Claimant apparently attended the consultation, [*see* Dkt. 18-8 at 43], and there is evidence that she was diagnosed with chronic kidney disease, stage 3, moderate, [Dkt. 18-7 at 205.] She was prescribed loop diuretics, such as Bumex and Lasix, throughout the period at issue, except briefly when they were believed to be causing a severe side effect, tinnitus. [*See* Dkt. 18-7 at 273; Dkt. 18-8 at 3; Dkt. 18-8 at 69.]

Examinations regularly recorded lower extremity edema. [Dkt. 18-7 at 80 (2+ pitting edema on January 4, 2018); Dkt. 18-7 at 289 (2+ bilateral on May 29, 2018); Dkt. 18-7 at 276-77 (Claimant reports swelling is better with only trace edema present on examination on June 12, 2018); Dkt. 18-8 at 61 (2+ leg and ankle edema on September 14, 2018); Dkt. 18-8 at 53 (+1-2 on October 10, 2018); Dkt. 18-8 at 46 (trace on November 12, 2018); Dkt. 18-8 at 40 (positive ankle and leg on November 30, 2018).] On July 16, 2018, Claimant was hospitalized for lower leg pain, had moderate erythema (or redness) and swelling throughout both her lower legs and feet, and she was diagnosed with cellulitis and hypertension. [Dkt. 18-7 at 246-49.] More recent examinations of her lower extremities also recorded redness, warmth to touch, and decreased sensation. [*See* Dkt. 18-8 at 69 (September 7, 2018); Dkt. 18-8 at 62 (September 14, 2018); Dkt. 18-8 at 6 (March 29, 2019).]

9

Claimant reported that she had pain with walking and nighttime cramping associated with her edema. [*See, e.g.*, Dkt. 18-7 at 280.] On September 7, 2018, her primary care physician advised her to elevate her legs. [Dkt. 18-8 at 69.] She also testified that her most comfortable position was sitting upright on a couch with her feet "propped" up "some of the time" on pillows raised up about 12 inches. [Dkt. 18-2 at 45.]

The Commissioner argues that there was "little evidence to support Dr. Flak's opinion" because the Claimant's "occasional" edema was sufficiently "managed" with prescription diuretics and restricted fluid intake. [Dkt. 21 at 16.] The Commissioner also argues that Dr. Flak treated only Claimant's left shoulder and did not treat her "heart condition, edema, or back pain." [Dkt. 21 at 17.] "Under the Chenery doctrine, the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace." *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.") (additional citations omitted)). Neither the Commissioner, nor the Court may supply missing findings on issues of fact to support the ALJ's decision. *See Chenery*, 318 U.S. at 87-88. Moreover, Dr. Flak treated Claimant's left shoulder with cortisone injections. [*See e.g.*, Dkt. 18-7 at 125-26.] However, Dr. Flak was apparently able to review records concerning her heart functioning, and the record demonstrates that he needed to consider her other conditions, including her "morbid obesity,"[8] to evaluate whether she would be a suitable candidate for arthroscopic surgery and/or being placed under anesthesia. [*See* Dkt. 18-7 at 222.]

---

[8] Dr. Flak recorded Claimant's weight as 366 lbs. [Dkt. 18-7 at 125.]

Accordingly, further consideration of Claimant's edema, the effect on her RFC, and Dr. Flak's opinion is necessary on remand.

## B. Other Arguments

Having found that remand is necessary based on the edema issue, the Court declines to analyze all of Claimant's remaining arguments. However, in the interest of providing guidance on remand, the Court addresses one of her arguments. The ALJ relied on Claimant's lack of treatment or routine and conservative treatment to conclude that medically determinable impairments—such as bilateral carpal tunnel syndrome—were not severe impairments at Step Two, [Dkt. 18-2 at 19], and that her statements concerning her subjective symptoms were not supported as to the severity of her impairments, such as her shoulder problems, [Dkt. 18-2 at 22]. The Seventh Circuit has explained that "[i]t is true that 'infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure or infrequency of treatment.'" *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014) (quoting *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008)). "But the ALJ may not draw any inferences 'about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.'" *Id.* (quoting *Craft*, 539 F. 3d at 679). The Court notes that *Craft* was applying the since rescinded SSR 96-7p. 539 F. 3d at 679. However, the ruling that replaced it, SSR 16-3p, includes the same relevant guidance:

> In contrast, if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.

SSR 16-3p (S.S.A Oct. 25, 2017), 2017 WL 5180304, at *9.

Here, Claimant testified that she needed to postpone bilateral carpal tunnel release surgeries because of infection complications related to a hysterectomy. [Dkt. 18-2 at 43.] She testified that she could not get the surgeries rescheduled because of her kidney problems. [Dkt. 18-2 at 44.] Dr. Flak also recorded various positive signs of shoulder impingement on examination, but he explained that Claimant was "not a surgical candidate arthroscopically" because of her obesity. [Dkt. 18-7 at 133.] Dr. Flak ordered physical therapy instead, [Dkt. 18-7 at 134], which claimant attended on multiple occasions, [*see e.g.*, Dkt. 18-7 at 102]. On August 3, 2018, Dr. Flak stated that injections had not helped, [Dkt. 18-7 at 219], but he continued to advise that surgery would be "very difficult," and he might not be able to complete the procedure because of complications concerning her weight, [Dkt. 18-7 at 222]. Before concluding that Claimant's level of treatment is an indication of the severity of her impairments and symptoms, further consideration of her explanations for not pursuing more aggressive treatment is necessary.

### IV.  CONCLUSION

For the reasons explained above, the Court **REVERSES** the ALJ's decision denying Claimant's benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C.§ 405(g) (sentence 4) as detailed above.

SO ORDERED.

Dated:  18 OCT 2021

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record
via email generated by the Court's ECF system.